UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>Arthur M. Reardon<br>and<br>Jillayne Reardon,<br><br>    Debtors | Chapter 13<br>Case No. 24-10090 |

### ORDER TO SHOW CAUSE AT HEARING

This case began in late April 2024.   More than a year ago, at the initial plan confirmation hearing in July 2024, the Court repeatedly expressed concern about the debtors' apparently lengthy history—dating back well over a decade—of failing to timely file federal income tax returns and failing to timely pay federal tax debt, which was (and is) alleged to exceed half a million dollars.   The Court also repeatedly cautioned against the debtors' continuing such a trend.   The Court emphasized that such a continuation would not be tolerated here in a chapter 13 bankruptcy.   Among its statements, the Court warned:

> There isn't going to be any failure to file postpetition tax returns.   There isn't going to be any failure . . . to pay postpetition taxes that are due.   That hole is not getting bigger during a chapter 13 case. . . . And I'll see to that whether the taxing authorities have anything to say about it or not.

Relatedly, after verifying that the $3,500 budgeted on the debtors' schedule J for "tax payments" each month was intended for paying postpetition taxes only, the Court urged the debtors to escrow those funds in a segregated account to ensure that the funds would be devoted only to that debt.

About a year later, in July 2025, the United States filed a motion on behalf of its Internal Revenue Service, seeking the dismissal of this case [Dkt. No. 88].   The motion, which remains

1

pending, says that the debtors have an outstanding (and increasing) 2024 federal income tax debt and that they failed to pay quarterly payments toward their estimated 2025 federal income tax liability.  Combining 2024 and 2025, the debtors were then alleged to owe nearly $46,000 in postpetition tax liabilities.  In response, the debtors denied the allegations while largely purporting to lack sufficient information to form any beliefs about the allegations, including allegations about payments that they had made and about the amount of tax due as listed on their 2024 federal income tax return [Dkt. No. 90].  The debtors also reported having made a $10,000 payment—after the motion to dismiss was filed—toward their 2025 estimated tax liability.

About two weeks after that response, the debtors filed a status report announcing: "Debtors and IRS have reached an agreement that the 2024 postpetition tax liability will be paid in full by August 4, 2025" [Dkt. No. 92].  They also conceded that, "given the requirements of the Code," dismissal of the case "w[ould] be appropriate" if they did not pay by that date.

The IRS has since expressed a willingness to give the debtors an undefined but limited amount of additional time to pay.  This willingness was relayed to the Court during an August 7, 2025 hearing on the motion to dismiss and in a status report filed by the United States the night before [Dkt. No. 96].  Accordingly, the Court then scheduled the matter for a further hearing on August 21, 2025.  The Court also then previewed its intention to issue this Order to Show Cause.

On August 14, 2025, the United States filed a further status report, disclosing that the debtors had submitted a payment of $13,949 toward their 2024 postpetition tax liability on the August 4 deadline [Dkt. No. 102].  The payment amount, however, was not enough to pay the debt in full as agreed.  Now, about $13,400 is still owed for 2024.

This case has been pending for nearly 16 months. No plan has been confirmed yet. Certain interested parties have recently made significant progress, via agreement, toward removing barriers to confirmation. Those parties appear to include the debtors and the IRS as to contested matters about the IRS's prepetition claim. But the process along the way has been relatively slow, with interested parties having spent the past year negotiating and concurrently preparing related contested matters for Court resolution.

The Court had been content to allow parties to move at their preferred pace because, as periodically reported by the chapter 13 trustee, the debtors have been regularly making their substantial plan payments. The recent news of the debtors' unpaid postpetition taxes, however, has caused the Court to reexamine the pace of progress and the significance of that pace. This reexamination has prompted the Court to question whether the debtors—rather than trying to achieve a financial fresh start—have merely devised a new means here of prolonging their seeming tradition of nonpayment. Several data points, including some allegations from the motion to dismiss, appear to support this view. Thus, the Court has become increasingly concerned that the debtors may be here in bad faith.

As the Court understands it, the chapter 13 trustee has made no interim distribution toward the debtors' federal tax debt and has no current intention of making such distributions.[1] Any distribution seems likely to hinge on plan confirmation, an event that is not guaranteed. To succeed in the plan confirmation endeavor, the debtors must show that they have addressed and

---

[1] The debtors' pending plan [Dkt. No. 20] proposes making preconfirmation adequate protection payments, under 11 U.S.C. § 1326(a)(1)(C), via the chapter 13 trustee to the Internal Revenue Service. The trustee's objection to that plan, however, indicates that he would not make such payments because adequate protection payments under section 1326(a)(1)(C) may be made only under circumstances that do not apply here [Dkt. No. 26]. He suggests that the debtors could instead seek an order otherwise authorizing the interim distributions. In the intervening year, the debtors have not elected to do that.

3

can continue to address certain federal tax obligations.   By seemingly allowing their federal tax issues to worsen through nonpayment of postpetition taxes during their chapter 13 bankruptcy case, the debtors do not seem to be headed in the right direction on that general issue.

This circumstance is particularly troubling because, at the outset of this case, the debtors conveyed that the days of neglecting their federal tax obligations were over.   As an initial attempt to show good faith on this point, they disclosed information on their schedules I and J (under the possible penalty of perjury) to show that they could afford to and expected to need to pay an estimated $3,500 per month in postpetition taxes.   The debtors have not amended or supplemented those schedules.   Nor have they otherwise indicated that a change in their financial circumstances would have prevented them from paying that expense in the estimated amount.   Yet, as detailed below, it appears that the debtors may have failed to use the funds for the intended purpose—undermining their initial projection of seeking chapter 13 relief in good faith.

In the first two quarters of 2025, for example, the debtors should have at least set aside $21,000 (i.e., $3,500 per month for six months) for postpetition taxes.   In that timeframe, as referenced above, they allegedly paid nothing toward their 2025 estimated tax liability, which then totaled $18,961.   Later, seemingly prompted by the motion to dismiss in July, they paid only $10,000 and offered no justification for the tardiness or the partial payment amount.   The Court understands that the budgeted $3,500 per month for postpetition taxes may have been intended to cover other taxes in addition to federal taxes.   But that possibility seemingly cannot explain the debtors' having initially paid nothing.   Thus, among other questions, the Court

4

questions whether the debtors used at least some of the earmarked $21,000 for a purpose other than postpetition taxes.[2]

As to 2024, the Court has similar questions. The debtors filed their bankruptcy petition and schedules in late April 2024. In the eight months of 2024 that followed, they should have at least accumulated $28,000 for use toward postpetition taxes. But, before the motion to dismiss was filed, they had allegedly paid only $13,000 toward 2024 federal income tax debt that was allegedly nearly $40,000. Then, only after being publicly accused, in the motion to dismiss, of acting in bad faith did they pay more—and that payment was only a partial payment by their agreed August 4 deadline. By their agreeing to pay the 2024 debt in full on short notice, they implied that funds might be available to do so. Yet, without explanation, they apparently decided not to pay in full.[3]

Such action, especially when combined with the track record and other actions outlined above, suggests that these debtors are not here attempting in good faith to resolve their federal tax woes. They instead have seemed to remain keen on paying the IRS as little as possible for as long as possible. This type of bad-faith conduct is cause for a chapter 13 case's dismissal or conversion to one under chapter 7. See 11 U.S.C. § 1307(c); In re Love, 957 F.2d 1350, 1354-

---

[2] In April 2025, the state taxing authority, Maine Revenue Services, filed a claim in this case, under 11 U.S.C. § 1305(a), for over $6,000 in unpaid postpetition income taxes and penalties. At the August 7 hearing on the motion to dismiss, counsel for MRS indicated that other postpetition state taxes may also be owed. These details only further the Court's concerns that, rather than reserve funds for postpetition taxes, the debtors may have used them for some other purpose.

[3] At the August 7 hearing, counsel to the IRS represented that, from his exchanges with counsel to the debtors, there appeared to be some last-minute confusion by the debtors about whether their $10,000 payment in July was intended to be applied toward 2024 or 2025 taxes. The debtors' counsel was unavailable to attend that hearing and explain. The Court is skeptical that any purported confusion has a role here. Even if the $10,000 was intended to be applied to the 2024 debt—which was alleged to be nearly $27,000—the $10,000 payment would not have been enough, when combined with the later $13,949 payment, to pay the debt in full. Rather, over $3,000 of the debt would still be due. And the debtors would be back to having paid nothing toward the 2025 taxes.

57 (7th Cir. 1992). The Court cannot allow a debtor to co-opt the chapter 13 bankruptcy process to further a tax evasion scheme. To allow such conduct would be wholly inconsistent with, for example, the Bankruptcy Code's concepts of ensuring fundamental fairness for creditors and requiring debtors to pay creditors as best they can. See In re Love, 957 F.2d at 1357-59.

Thus, based on the foregoing, the Court is considering finding that the debtors are—and perhaps from the outset of this case have been—acting in bad faith in relation to their federal tax debt. The Court is considering dismissing their case or converting it to one under chapter 7 accordingly. The debtors must and any other interested party may attend a non-evidentiary hearing on this Order to Show Cause on August 21, 2025, at 10:00 a.m., at the United States Bankruptcy Court, 202 Harlow Street, Bangor, Maine. Parties may participate in the hearing in person in the Bangor Courtroom, by video from the Portland Courtroom, or by telephone.

At the hearing, the Court may act on the Order to Show Cause based on the existing record or, if requested and warranted, may schedule further proceedings. The Court also anticipates that the IRS and Maine Revenue Services will provide reports, at the hearing, on the status of any postpetition taxes owed and payments received.

Dated: August 14, 2025

Michael A. Fagone
United States Bankruptcy Judge
District of Maine